



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 5, 2021**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FT. WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WISE OIL & GAS NO. 10, LTD., | § | CASE NO. 19-44785-MXM-7 |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |

## ORDER DENYING LEDGERWOOD CREDITORS'
## MOTION TO DISMISS AND MOTION FOR SANCTIONS
*[Relating to ECF. Nos. 34 & 85]*

Before the Court are (i) the *Creditor's Motion to Dismiss and Brief in Support* (the "***Motion to Dismiss***")[1] and (ii) the *Creditor's Motion for Sanctions and Brief in Support* (the "***Motion for Sanctions***")[2] filed by Mr. Stan Ledgerwood, Ms. Tina Ledgerwood, Mr. Don Ledgerwood, Ms.

---

[1] ECF No. 34.
[2] ECF No. 85.

Shirley Ledgerwood, and the Ledgerwood Family Farm, LLC (together, the "***Ledgerwood Creditors***").

The Motion to Dismiss seeks to dismiss, for "cause" under 11 U.S.C. § 707, the Chapter 7 bankruptcy case of Wise Oil & Gas No. 10, Ltd. (the "***Debtor***"). The Motion for Sanctions seeks sanctions against (i) the Debtor; (ii) the Debtor's general partner, Wise Oil & Gas Management No. 10, LLC (the "***General Partner***"); and the following individuals: Mr. Robert Cocanougher, Mr. Daniel Cocanougher, Ms. Jamie Sue Downing, and Mr. William D. Patterson (together, the "***Cocanougher Sanction Targets***").

In addition to the Motion to Dismiss and the Motion for Sanctions, the Court also analyzed and considered the Debtor's Response,[3] the Chapter 7 Trustee's Reply,[4] the Debtor's Response to the Trustee's Reply,[5] the Ledgerwood Creditors' Alter-Ego Brief[6] and Supplement,[7] the Joint Response[8] and *Joint Notice of Errata*[9] filed by the Debtor and the Cocanougher Sanction Targets, the Debtor's Response Brief,[10] the Ledgerwood Creditors' Reply,[11] and the Ledgerwood Creditors' Response Brief.[12] The Court also analyzed and considered the testimony of witnesses,[13]

---

[3] *Debtor's Response in Opposition to Motion to Dismiss Filed by the Ledgerwood Group of Claimants*, ECF No. 44 (the "***Debtor's Response***").

[4] *Trustee's Reply to Creditor's Motion to Dismiss [DOC. No. 34] and Debtor's Response [DOC. No. 44]*, ECF No. 55 (the "***Chapter 7 Trustee's Reply***").

[5] *Debtor's Response to Trustee's Reply [ ECF No. 55] to Creditor's Motion to Dismiss [Doc. 34] and Debtor's Response [DOC. 44]*, ECF No. 64 (the "***Debtor's Response to Trustee's Reply***").

[6] *Creditor's Issue Brief Regarding Oklahoma Alter-Ego Statute*, ECF No. 80 (the "***Ledgerwood Creditors' Alter-Ego Brief***").

[7] *Notice of Filing Exhibit 1 to Creditor's Issue Brief Regarding Oklahoma Alter-Ego Statute*, ECF No. 81 (the "***Supplement***").

[8] *Joint Response to Creditor's Motion for Sanctions*, ECF No. 91 (the "***Joint Response***").

[9] ECF No. 95.

[10] *Debtor's Issue Brief on Law Applicable to Alter Ego Claims*, ECF No. 92 (the "***Debtor's Response Brief***").

[11] *Creditor's Response to Respondents' Joint Notice of Errata*, ECF No. 115 (the "***Ledgerwood Creditors' Reply***").

[12] *Creditor's Issue Brief and Response on Law Applicable to Alter Ego and Similar Claims*, ECF No. 116 (the "***Ledgerwood Creditors' Response Brief***").

[13] The following witnesses testified during the three full days of trial on the Motions before the Court: (i) Mr. William D. Patterson; (ii) Mr. Wayne Newkumet; (iii) Mr. Hossein Farzaneh; (iv) Mr. Daniel Cocanougher; (v) Mr. Robert Allen Cocanougher; (vi) Mr. Stan Ledgerwood; and (vii) Ms. Jamie Downing. The Court found each of the witnesses

the exhibits admitted into evidence, and the arguments of counsel. After due deliberation, the Court

makes the following findings of fact and conclusions of law.

## I.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction to consider both the Motion to Dismiss and the

Motion for Sanctions pursuant to 28 U.S.C. §§ 157 and 1334. Both Motions constitute core

proceedings, which the Court has statutory and constitutional authority to enter final orders

pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and

1409(a).

## II.    NOTICE

Notice of the Motion to Dismiss, the Motion for Sanctions, and the hearing on both Motions

was proper, timely, adequate, and sufficient. A reasonable opportunity to conduct discovery,

object, and be heard was afforded to the Debtor, the Ledgerwood Creditors, and all other parties-

in-interest in this case.

---

credible. Specifically, the Court found the testimony of Mr. Patterson, Mr. Daniel Cocanougher, Mr. Robert Cocanougher, and Ms. Downing (together, the "***Cocanougher Witnesses***") to be especially credible. And much of their testimony was corroborated with credible and relevant documents that were admitted into evidence throughout the three days of trial. Regarding Mr. Farzaneh, although the Court found him to be credible, much of his testimony was not relevant to any of the issues before the Court. Mr. Farzaneh primarily testified about the Ledgerwood Creditors' transfers of their properties and on justifying the backdating of documents by the Ledgerwood Creditors to coincide with their intent—years prior—regarding the transfer and ownership of their land. To the extent Mr. Farzaneh's testimony was conceivably relevant, his testimony failed to provide any evidentiary support for the Ledgerwood Creditors' allegations against the Debtor and the Cocanougher Sanction Targets raised in the Ledgerwood Creditors' two Motions before the Court. Finally, regarding Mr. Stan Ledgerwood, the Court found him to be credible, but like Mr. Farzaneh, much of Mr. Ledgerwood's testimony was not relevant to the issues before the Court. Mr. Ledgerwood primarily testified about the saltwater contamination that occurred on the Ledgerwood's property and the resulting damages and inconvenience he and his family endured because of the saltwater contamination. Mr. Ledgerwood also testified about the subsequent restoration efforts that have occurred to date.

### III.   FACTS

**A.   Background Facts about the Debtor and its relevant affiliates**

The Debtor is a Texas limited partnership formed on March 17, 2008. [14] The General Partner owns a 1% interest in the Debtor. The limited partners of the Debtor include the following entities affiliated with the Cocanougher family, which collectively hold 93% of the limited partner interests in the Debtor: (i) The Estate of Allen Cocanougher; (ii) the Cocanougher Family Trust A; (iii) DMC Asset, Ltd.; (iv) EJC Asset, Ltd.; (v) RACS Asset, Ltd.; (vi) JBC Asset, Ltd.; (vii) RAC Asset, Ltd.; and (viii) CDC Asset, Ltd. The remaining 6% of the limited partner interests are held by the following: (i) 3% by Mr. William D. Patterson—a long-time business associate and attorney for the Cocanougher family—and (ii) 3% by Ms. Tracey L. Breadner—who has no relationship with the Cocanougher family.

The Debtor was formed to invest in oil and gas ventures. Between 2011 and 2013, the Debtor spent more than $1.5 million acquiring 50% undivided, non-operating working interests in a group of over 100 oil and gas leases located in Garvin and McClain counties in Oklahoma. [15] The Debtor acquired its interests in the leases from Newkumet Exploration, Inc., an oil and gas company based in Midland, Texas ("***Newkumet***").

Each of the Cocanougher Witnesses testified that the Debtor's limited partners are frequent, passive investors in oil and gas ventures, like the Debtor limited partnership. The limited partners invest in the oil and gas assets through limited partnerships in order to limit personal liability in the event an investment loses money. In such an event, the limited partners' liability is limited to the amounts invested in that particular entity. This structure is the Cocanougher family's normal

---

[14] Debtor Exs. 14, 15, 16, and 18.
[15] Debtor Ex. 23; ECF No. 33.

business practice, which is common in the industry. On these points, the Court found each of the Cocanougher Witnesses' testimony to be consistent, credible, and supported by the business records admitted into evidence.

Each of the Cocanougher Witnesses testified credibly that the Debtor's investment in the oil and gas leases proved to be an economic failure. In addition to the more than $1.5 million spent in acquiring its 50%, non-operating working interests in the leases, the Debtor spent over $1 million paying joint interest billing expenses submitted by the operator.

Over the years, when the Debtor needed money to pay its share of the joint interest billing expenses, the Debtor obtained loans from companies affiliated with the Cocanougher family. The lenders to the Debtor included: (i) Wise Resources, Ltd.; (ii) Wise Capital, Ltd.; (iii) Mr. Patterson; (iv) CDC Asset, Ltd.; (v) Cocanougher Family Trust-Trust-C; and (vi) DDEC, Ltd. (together, the "*Cocanougher Lenders*"). Only Mr. Patterson and CDC Asset, Ltd., are both a limited partner of the Debtor and a Cocanougher Lender to the Debtor.

The credible and persuasive evidence established that from January 20, 2011, through February 16, 2018, the Cocanougher Lenders made at least twenty-one separate loans to the Debtor. Each of the loans was evidenced by a written promissory note that was created at or about the time such loan was made.[16] The evidence further established that each loan was also reflected in the applicable Debtor's Federal Income Tax Return for the year the applicable loans were made.[17] By February 16, 2018, the Cocanougher Lenders had loaned the Debtor a cumulative total of $1,901,000.[18]

---

[16] Debtor's Exs. 67, 69, 71, 73, 75, 77, 79, 81, 83, 85, 87, 89, 91, 93, 95, 97, 99, 101, 102, 104, 106, 108, and 110.
[17] Debtor's Exs. 122, 123, 124, 126, 128, 130, and 132.
[18] Debtor's Exs. 108 & 110.

The Ledgerwood Creditors contend that the Debtor was inadequately capitalized from the time it was formed and that, "for the next eight years," the Cocanougher Sanction Targets "participated in a coordinated scheme to operate Debtor indefinitely as an insolvent company that could not fulfill its obligations to Ledgerwood and the public." [19] The Court disagrees. The Ledgerwood Creditors failed to offer any credible or persuasive evidence to support their contention or to controvert the credible and persuasive testimony of the Cocanougher Witnesses and the Debtor's business records admitted into evidence.

The Ledgerwood Creditors also dispute that the Cocanougher Lenders loaned money to the Debtor. Rather, they contend that the Cocanougher Lenders' loans constituted capital contributions into the Debtor rather than loan obligations of the Debtor. The Court disagrees. Other than mere speculation and innuendo, the Ledgerwood Creditors offered no credible evidence to support their allegations that the loans made to the Debtor by the Cocanougher Lenders constituted capital contributions. The overwhelming, persuasive, and credible evidence—established by both the testimony of the Cocanougher Witnesses and the Debtor's business records admitted into evidence—established that each of the loans was made in good faith and intended by the applicable Cocanougher Lender to be a loan transaction, as opposed to a capital contribution into the Debtor. Again, noting that only two of the Cocanougher Lenders were also limited partners of the Debtor is important.

## B.    Background Facts about the Ledgerwood Creditors and their Property

As of June 2017, each of the Ledgerwood Creditors owned a portion of four separate tracks of land covering approximately 230 contiguous acres in Garvin County, Oklahoma.[20] The land had

---

[19] *See* Motion for Sanctions ECF NO. 85, page 10, ¶ 30.
[20] Debtor Exs. 136 & 165

been in the Ledgerwood family since the 1920s. Movants Don and Shirley Ledgerwood have lived

in a house located on track two of the land for over forty years.[21] In 2015, movants Stan and Tina

Ledgerwood built and moved into a house located on track one of the land.[22] A water well was

located on track three of the land, which supplied water for drinking and other domestic purposes

to both residential houses.[23]

### C.    The Ledgerwood Lease and Subsequent Saltwater Contamination

On or about May 3, 2011, movants Don and Shirley Ledgerwood executed an *Oil and Gas*

*Lease (Paid-Up)*[24] (the "***Ledgerwood Lease***") with Newkumet. The Ledgerwood Lease was

subsequently included in the bundle of leases from which the Debtor acquired its 50% undivided,

non-operating working interests from Newkumet.

The Ledgerwood Lease was later included in a secondary recovery unit called the East

Story Gibson Sand Unit (the "***ESGU***"). The ESGU was formed pursuant to an application filed by

Southcreek Petroleum Corporation ("***Southcreek***") with the Oklahoma Corporation Commission

(the "***OCC***"). The application was approved by the OCC in 2013.

The purpose of the ESGU was to enhance the recovery of oil from the existing, mature oil

field. Southcreek enhanced the ESGU's purpose by flooding the producing formation with water

to repressurize the ESGU so that Southcreek might recover oil still in places within the formation.

The OCC designated Southcreek as sole operator of the ESGU. At all relevant times, the Debtor

was a non-operating, 50% working interest owner with no control over operations. Southcreek laid

the water lines across portions of the ESGU, including portions of the Ledgerwood Creditors' land.

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] Debtor Ex. 28.

At some point in or prior to June 2017, a water control valve installed by Southcreek allegedly failed, resulting in an underground release of saltwater on certain parts of the Ledgerwood Creditors' land. The saltwater release not only contaminated a portion of the Ledgerwood Creditors' land, but it also contaminated the water well located on track three of the land that was used by the Ledgerwood Creditors for drinking water and other domestic purposes.

The uncontroverted evidence established that the Debtor and the Cocanougher Sanction Targets became aware of the saltwater contamination on or about June 16, 2017.[25] Southcreek— the operator of the ESGU—was insured, and the saltwater contamination was, or is in the process of being, remediated by the insurance carrier and/or Southcreek. In addition, Southcreek or the insurance carrier caused two new water wells to be drilled on the Ledgerwood Creditors' land to replace the contaminated well. Nearly $1 million has been expended to date by Southcreek or its insurance carrier on the remediation efforts to clean up the saltwater contamination and drill two new water wells on the Ledgerwood Creditors' land.

### D.    The Ledgerwood Creditors' Oklahoma Lawsuit

On May 31, 2019, the Ledgerwood Creditors filed a state court lawsuit in Garvin County, Oklahoma (the "***Oklahoma Lawsuit***"), against seven defendants, including the Debtor. On June 7, 2019, the Ledgerwood Creditors filed their First Amended Petition in the Oklahoma Lawsuit.[26] Only the Debtor is named as a defendant in the Oklahoma lawsuit. The General Partner, the Debtor's limited partners, the Cocanougher Sanction Targets, nor any of the Cocanougher Lenders are named as defendants. Additionally, there are no factual allegations asserted in the Oklahoma Lawsuit that could be construed as asserting the basis of possible direct, derivative, alter-ego, or

---

[25] Ledgerwood Ex. 188.
[26] Debtor's Ex. 115.

any other claims or causes of action against any of the Debtor's limited partners, the Cocanougher Sanction Targets, or the Cocanougher Lenders.

**E.      The Cocanougher Lenders' Loan Consolidation Transaction**

On or about June 18, 2019, the Debtor and the Cocanougher Lenders decided to consolidate their many loans made to the Debtor since 2011 into a single promissory note for administrative convenience and to secure the debt with a single deed of trust (the "***Loan Consolidation Transaction***"). To document the Loan Consolidation Transaction, the Cocanougher Lenders executed the following documents:

  a.  *Participation Agreement.*[27] Under the Participation Agreement, Wise Resources, Ltd. ("***Wise Resources***"), was the lead lender and held the entire indebtedness of $1,901,000 owed by the Debtor. The other Cocanougher Lenders each owned pro rata participation interests in the total indebtedness based on their respective loans to the Debtor.

  b.  *Promissory Note.*[28] The Promissory Note has a principal amount of $1,901,000 payable to Wise Resources (the "***Wise Resources Note***"). The Wise Resources Note bears interest at 6.0% annually with a maturity date of February 19, 2025.

  c.  *Deed of Trust.*[29] The Deed of Trust was filed of record in Garvin County, Oklahoma, on June 27, 2019.

---

[27] Debtor Ex. 109.

[28] Debtor Ex. 110.

[29] Debtor Ex. 111. On a side note, because the Deed of Trust was filed within one year of the Debtor's bankruptcy filing, the lien and security interest created by the Deed of Trust was subject to the Trustee's avoidance powers under 11 U.S.C. § 547. As a result, after the Debtor filed its bankruptcy case, Wise Resources, with the consent of the Cocanougher Lenders, executed and recorded the *Release of Deed of Trust* securing the Wise Resources Note rendering the Wise Promissory Note an unsecured claim in the Debtor's bankruptcy case. Debtor Ex. 13.

Although the Participation Agreement was executed on or about June 18, 2019, it has an effective date of February 20, 2018.

Based on this, the Ledgerwood Creditors contend that (i) the Cocanougher parties drafted, nefariously backdated, and executed the Loan Consolation Transaction with the actual intent of hindering and delaying the Ledgerwood Creditors' claims; (ii) the Cocanougher Lenders did not intend to enforce the terms or take collection action against the Debtor; (iii) the Loan Consolidation Transaction documents were conceived of and drafted in response to the Oklahoma Lawsuit but deceptively imply that the Cocanougher parties reached the stated agreements on or about February 20, 2018; and (iv) the Loan Consolation Transaction documents were conceived of and drafted in contemplation of the Debtor's future bankruptcy filing but deceptively imply that the parties reached the stated agreements on or about February 20, 2018. The Court disagrees with each of the Ledgerwood Creditors' contentions.

The overwhelming, persuasive, and credible evidence established that the Loan Consolation Transaction was entered into by the Cocanougher Lenders based on a sound business decision, made in good faith, and was properly documented. Each of the Cocanougher Witnesses testified credibly that the business purpose behind an effective date of February 20, 2018, for the Participation Agreement—as opposed to its June 18, 2019, execution date—was because the last loan made by a Cocanougher Lender was on February 20, 2018. The Cocanougher Witnesses' uncontroverted testimony on this point was corroborated by the Debtor's business records.

Aside from mere speculation, the Ledgerwood Creditors failed to offer one shred of credible evidence to support their contentions or to contradict the credible testimony from each of the Cocanougher Witnesses and the Debtor's corroborating business records.

**F.      The Debtor's Bankruptcy Filing**

Between the filing of the Oklahoma Lawsuit on May 31, 2019, and the Debtor's bankruptcy filing on November 26, 2019, the Debtor incurred approximately $22,000 in legal fees by its Oklahoma counsel in defending against the Oklahoma Lawsuit.[30] Each of the Cocanougher Witnesses testified that (i) the Debtor anticipated incurring far more fees and expenses defending against the Oklahoma Lawsuit if the Debtor had not filed its bankruptcy case; (ii) the Debtor's only source to fund the Debtor's litigation defense would have been the approximately $38,000 in the Debtor's bank account; and (iii) the Debtor did not have access to or the ability to obtain additional loans from any source—including any of the Cocanougher Lenders—to defend itself in the Oklahoma Lawsuit.

The Cocanougher Witnesses each testified further that the motivating factors for filing the Debtor's Chapter 7 bankruptcy case were (i) to avoid incurring additional legal fees defending against the Oklahoma Lawsuit and (ii) to have a Chapter 7 Trustee investigate the Debtor's affairs, liquidate the Debtor's estate's assets (including any viable causes of action), and—if funds were available—make a distribution to creditors of the Debtor that held allowed claims. Thus, the filing of the Debtor's Chapter 7 Bankruptcy Petition was a business decision.

The Court found that the testimony from each of the Cocanougher Witnesses on each of these points was credible, consistent, and persuasive. In addition, each of the Cocanougher Witnesses testified credibly and persuasively that at no time prior to the Debtor's bankruptcy filing did any of them believe or contemplate they could conceivably have any potential personal liability exposure for the claims now being asserted by the Ledgerwood Creditors in the Motion to Dismiss

---

[30] Debtor Ex. 62 & 118.

and the Motion for Sanctions. Further, no such alleged claims or any facts supporting any such alleged claims were plead by the Ledgerwood Creditors in the Oklahoma Lawsuit.

The credible evidence established that it was not until the Debtor's § 341 meeting of creditors that the Ledgerwood Creditors first asserted the alleged existence of any claims or causes of action against the Cocanougher Sanction Targets, including but not limited to derivative or alter-ego claims.[31]

Wise Resources, the lead lender and holder of the Wise Resources Note under the Loan Consolidation Agreement, filed a timely proof of claim in the amount of $1,901,000. No objection has been filed to that proof of claim, and it is *prima facie* valid.[32] Wise Resources' claim has not been equitably recharacterized, and the overwhelming credible evidence in the record strongly suggests that the claim is not likely to be recharacterized.

The Ledgerwood Creditors have filed five separate proofs of claim in the Debtor's bankruptcy case. Though all the Ledgerwood Creditors' claims arise from the same incident, *i.e.,* the saltwater contamination that occurred on their properties, they are not a single party or a single creditor. They are five distinct entities, consisting of four unique individuals and a limited liability company. The Ledgerwood Creditors owned approximately 230 acres in four distinct tracts of land that were harmed by the saltwater contamination in varying degrees. The five Ledgerwood Creditors each have distinct and divisible claims.

---

[31] Ledgerwood Exs. 258 & 259.
[32] *See* Fed. R. Bankr. P. 3001(f).

## IV.    ANALYSIS

### A.    Motion to Dismiss

The Ledgerwood Creditors contend that the Debtor's bankruptcy case should be dismissed "for cause" under § 707(a) of the United States Bankruptcy Code. The Bankruptcy Code does not define the term "for cause." Courts have broad authority to determine what constitutes "cause" for dismissal under § 707(a), which can be any reason cognizable to the court that constitutes abuse of the bankruptcy process.[33] In *Krueger*, the Fifth Circuit directs the Court to consider all the facts and circumstances surrounding the reason the Debtor filed for bankruptcy. This Court has considered the testimony of each of the witnesses and documents admitted into evidence over three full days of trial.

The Fifth Circuit further stated in *Krueger* that "[a] debtor's bad-faith in the bankruptcy process can serve as the basis of a dismissal 'for cause' . . ."[34] Bad faith can include pre-petition conduct, post-petition conduct, or a petition that simply serves no legitimate bankruptcy purpose.[35] On the other hand, filing bankruptcy to avoid high litigation cost does not constitute bad faith *per se*.[36]

Here, the Ledgerwood Creditors assert eight independent grounds to establish "cause" for dismissal of the Debtor's bankruptcy case:

      i.      The Debtor's case is a "no asset" corporate Chapter 7;[37]

      ii.     The Debtor's case is a two-party dispute;[38]

---

[33] *See In re Krueger*, 812 F.3d 365, 370 (5th Cir. 2016).
[34] *Id.* at 370.
[35] *Id.*
[36] *See In re Carbaugh*, 299 B.R. 395, 399 (Bankr. N.D. Tex. 2003).
[37] ECF No. 34 at 1, ¶ 1.
[38] *Id.*

iii.    The Debtor is merely a nominal insolvent conduit and instrumentality of the Cocanougher family;[39]

iv.    The Ledgerwood Creditors are the only *bona fide* creditors of the Debtor;[40]

v.    The primary purpose of the Debtor's bankruptcy filing was to shield non-debtors from liability;[41]

vi.    The Debtor's case was filed as an illegitimate litigation tactic for the purpose of delaying and increasing the costs of the Ledgerwood Creditors' Oklahoma Lawsuit;[42]

vii.    After learning of the Ledgerwood Creditors' claims, the Cocanougher Sanction Targets "created hundreds of pages of backdated 'effective date' documents and delinquent tax returns;"[43] and

viii.    The representatives of the Debtor, the Cocanougher Sanction Targets, and the Cocanougher Lenders have made several false or misleading statements exhibiting a general lack of candor in the Debtor's bankruptcy case.[44]

The Court will address each of the Ledgerwood Creditors' contentions in turn.

(i)    **The estate has assets**.

First, the Ledgerwood Creditors argue that the Debtor's case is a "no asset" corporate Chapter 7. The Court disagrees. The uncontroverted and overwhelming evidence established—from the day the case was filed—that the Debtor's estate had, and has, assets. It is undeniable that

---

[39] *Id*. at 2, ¶ 2.
[40] *Id*. at 1, ¶ 1.
[41] *Id*.
[42] *Id*. at 2, ¶ 2.
[43] *Id*. at 2, ¶ 2.d.
[44] *Id*. at 3, ¶ 2.g.

the Debtor's estate includes: (i) At least $32,764.23 in cash (which was turned over by the Debtor to the Chapter 7 Trustee);[45] (ii) a 50%, non-operating working interest in over one hundred oil and gas leases (which the Chapter 7 Trustee is currently administering)—the value of which is undetermined; and, (iii) according to the Ledgerwood Creditors, "alter-ego" and other potential derivative claims against the Cocanougher Sanction Targets. Although no credible evidentiary support exists in the record to sustain the Ledgerwood Creditors' "alter-ego" and derivative claims against the Cocanougher Sanction Targets, the Court notes that, on the one hand, the Ledgerwood Creditors assert that the Debtor's case is a "no asset" case, yet on the other hand, they claim that the estate holds alleged valuable alter-ego and derivative claims against the Cocanougher Sanction Targets—clearly inconsistent positions.

Therefore, the Court finds and concludes that the clear and irrefutable evidence established that the Debtor's estate has assets. The Ledgerwood Creditors' first contention evidencing "cause" to dismiss the Debtor's case has no merit, is baseless, and fails.

  (ii)  **This is a multi-party dispute**.

Second, the Ledgerwood Creditors contend that this case is a two-party dispute. Again, the Court disagrees. The uncontroverted and overwhelming evidence established that there are no less than six creditors of the Debtor. Even if the Court were to find that the five different persons that make up the Ledgerwood Creditors constitute one creditor—which the Court disputes—Wise Resources also holds a timely filed proof of claim in the amount of $1,901,000.

---

[45] Debtor Ex. 62.

Therefore, it is undeniable that this is not a two-party dispute between the Ledgerwood Creditors and the Debtor. Consequently, the second contention evidencing "cause" to dismiss the Debtor's case is baseless and fails.

**(iii)    The debtor was capitalized and existed for a proper purpose**.

Third, the Ledgerwood Creditors contend that the Debtor is merely a nominal insolvent conduit and instrumentality of the Cocanougher family. The Court disagrees. The uncontroverted and overwhelming evidence established that the Debtor was adequately capitalized when it was formed and was formed for a proper purpose common in the industry. The Ledgerwood Creditors failed to offer any credible evidence to suggest that the Debtor was merely a nominal insolvent conduit or instrumentality of the Cocanougher family. Therefore, the Ledgerwood Creditors' third contention evidencing "cause" to dismiss the Debtor's case fails.

**(iv)    The Ledgerwood Creditors are not the only *bona fide* creditors of the Debtor**.

Fourth, the Ledgerwood Creditors contend that they are the only *bona fide* creditors of the Debtor. Again, the Court disagrees. The uncontroverted and overwhelming evidence established that over a period of several years, the Cocanougher Lenders made a series of loans to the Debtor. Each of the loans was evidenced by promissory notes that were created at or about the time the various loans were made. Further, each of the loans was reflected in Federal Income Tax Returns that were filed in the applicable years.

The credible evidence further established that, in 2019, the Cocanougher Lenders decided to consolidate their loans into a single promissory note so that the debt could be secured by a single deed of trust. Under the Loan Consolidation Transaction, Wise Resources is the lead lender and holds the entire indebtedness of $1,901,000. The Cocanougher Lenders each own pro rata participation interests in the consolidated note.

Wise Resources filed a timely proof of claim in the amount of $1,901,000. Without any credible evidence to support the Ledgerwood Creditors' contention, they assert that the Cocanougher Lenders' loans to the Debtor were "equity investments" rather than loans—even though most of the Cocanougher Lenders were not limited partners or the General Partner of the Debtor. No objection has been filed to that proof of claim, and it is *prima facie* valid.[46]

Moreover, Wise Resources' proof of claim has not been equitably recharacterized, and the overwhelming, credible evidence in this record strongly suggests that recharacterization of the claim is not likely. More to the point, again, the Ledgerwood Creditors failed to offer any credible evidence to suggest that recharacterization of the Wise Resources unsecured claim is appropriate. The Cocanougher Lenders' status as insiders of the Debtor and their lending transactions with the Debtor does subject the Cocanougher Lenders to heightened scrutiny, but their status does not, by itself, suggest or serve as evidence that Wise Resources or the Cocanougher Lenders are not *bona fide* creditors. Here, the Court has given heightened scrutiny to the insider loans made by the Cocanougher Lenders to the Debtor and has found each of the loans to be bona fide loans made in good faith by the Cocanougher Lenders.

Therefore, the Ledgerwood Creditors' fourth contention evidencing "cause" to dismiss the Debtor's case is baseless and fails.

**(v)    The Debtor filed bankruptcy as a valid business decision**.

Fifth, the Ledgerwood Creditors contend that the *primary* purpose of the Debtor's bankruptcy filing was to shield non-debtors—the Cocanougher Sanction Targets—from liability. Again, the Court disagrees. In support of this contention, the Ledgerwood Creditors cite to

---

[46] *See* Fed. R. Bankr. P. 3001(f).

comments made by the Debtor's former attorney—Mr. Mark Petrocchi—at the Debtor's § 341 meeting. The Court finds, however, that the Ledgerwood Creditors misconstrue and have taken Mr. Petrocchi's comments out of context. The Court further finds and concludes that the Ledgerwood Creditors failed to offer a scintilla of credible evidence to suggest that the Debtor's bankruptcy case was filed to shield the Cocanougher Sanction Targets from liability.

In addition, even if, *arguendo*, any such viable claims existed against the Cocanougher Sanction Targets, the filing of the Debtor's case would not "shield" them from such claims. Specifically, under well-settled federal bankruptcy law, any such derivative or alter-ego claims belong to the Debtor's bankruptcy estate, not to individual creditors such as the Ledgerwood Creditors.[47] It is also undeniable that the filing of the Debtor's bankruptcy petition vested any and all such alleged derivative or alter-ego claims, however tenuous, in the Debtor's bankruptcy estate, which the Chapter 7 trustee administers. Marilyn Garner, the Debtor's Chapter 7 Trustee, has, in fact, conducted her own investigation and analysis to determine if any such viable or potential derivative or alter-ego claims exist against the Cocanougher Sanction Targets, and she has concluded that no such viable claims exist.[48]

Further, each of the Cocanougher Witnesses testified credibly and persuasively that at no time prior to the Debtor's bankruptcy filing did any of them believe or contemplate they could conceivably have any potential personal liability exposure for the claims now being asserted by the Ledgerwood Creditors in the Motion to Dismiss and the Motion for Sanctions. And at no time did any of the Cocanougher Sanction Targets believe the filing of the Debtor's bankruptcy case could shield them from such liability. As the credible, uncontroverted, and persuasive evidence

---

[47] *See, e.g.*, *S.I. Acquisition*, 817 F.2d 1142 (5th Cir. 1987).
[48] ECF No. 123.

18

showed, the Debtor filed bankruptcy due to mounting litigation costs, insufficient liquidity, and the inability to obtain more financing through loans to defend the Oklahoma Lawsuit.

Therefore, the Ledgerwood Creditors' fifth contention evidencing "cause" to dismiss the Debtor's case is baseless and fails.

**(vi)    The Debtor did not file bankruptcy as a litigation tactic**.

Sixth, the Ledgerwood Creditors contend that the Debtor's case was filed as a litigation tactic for the purpose of delaying and increasing the costs of the Ledgerwood Creditors' Oklahoma Lawsuit. Again, the Court disagrees. The Ledgerwood Creditors failed to offer any credible evidence to support their contention. On the other hand, each of the Cocanougher Witnesses testified credibly to the genuine motive behind the decision for the Debtor's bankruptcy filing, which, in part, was to limit costs to the Debtor, not to cause delay or increase costs for the Ledgerwood Creditors.

Further, the Ledgerwood Creditors have filed five proofs of claim in the Debtor's bankruptcy case. They can liquidate their alleged claims against the Debtor in this Court in a timely and economical fashion. The Court notes that since the Debtor's bankruptcy case was filed on November 26, 2019, the Ledgerwood Creditors have not filed a motion to seek relief from the § 362 automatic stay to liquidate their claims against the Debtor in the Oklahoma Lawsuit. But back on June 5, 2020, the Ledgerwood Creditors did file a motion to seek relief from the § 362 automatic stay in order to proceed with the Oklahoma Lawsuit against non-debtor parties, which was not opposed to by the Debtor, any creditor, or any party-in-interest, and was granted by the Court.[49]

---

[49] *See* ECF Nos. 23 and 31.

Therefore, the Court finds that the Ledgerwood Creditors' sixth contention evidencing "cause" to dismiss the Debtor's case fails and is without merit.

**(vii)    The Loan Consolidation Transaction was a valid business decision**.

Seventh, the Ledgerwood Creditors contend that the Cocanougher Sanction Targets "created hundreds of pages of backdated 'effective date' documents and delinquent tax returns for [the Debtor]".[50] Again, the Court disagrees. As previously detailed, the Court found that the overwhelming, persuasive, and credible evidence established that the Loan Consolation Transaction was entered into by the Cocanougher Lenders based on a sound business decision, made in good faith, and was properly documented. Each of the Cocanougher Witnesses testified credibly that the business reason the Cocanougher Lenders decided to make the Participation Agreement effective February 20, 2018—as opposed to its June 18, 2019, execution date—was because the last loan made by a Cocanougher Lender was on February 20, 2018. The Cocanougher Witnesses' uncontroverted testimony on this point was corroborated by the Debtor's business records. Further, the evidence established that the Debtor had not filed "delinquent tax returns" as asserted by the Ledgerwood Creditors.

Therefore, the Court finds that the Ledgerwood Creditors' seventh contention evidencing "cause" to dismiss the Debtor's case fails and is wholly without merit.

**(viii)    The Debtor has complied with its statutory duties, and the Cocanougher Sanction Targets have exhibited candor in these proceedings**.

Finally, the Ledgerwood Creditors allege that "the Cocanoughers have made a number of false or misleading statements and exhibited a general lack of candor in these proceedings."[51] In

---

[50] ECF No. 34 at 2, ¶ 2.d.
[51] ECF No. 34 pg. 3 ¶ 2.g.

support of this salacious allegation, the Ledgerwood Creditors state "[t]his particular factor will be addressed in a forthcoming motion for sanctions." [52] Approximately nine months later, the Ledgerwood Creditors filed their Motion for Sanctions—again contending that the Debtor and the Cocanougher Sanction Targets should be sanctioned for "misrepresentations and a lack of candor in these proceedings."[53]

Nowhere in the Motion to Dismiss or in the Motion for Sanctions do the Ledgerwood Creditors ever identify what constituted the alleged "misrepresentations" or "lack of candor" that they assert occurred. More importantly, the Ledgerwood Creditors failed to offer a scintilla of evidence during three full days of trial that could remotely be construed as an indication of a "misrepresentation" or "lack of candor" made by either the Debtor or any of the Cocanougher Sanction Targets in the Debtor's case proceedings.

To the contrary, the Court finds and concludes that the Debtor has complied with its statutory duties in its bankruptcy case. The Debtor (i) filed a list of creditors;[54] (ii) filed Schedules of Assets and Liabilities;[55] (iii) filed a Statement of Financial Affairs;[56] (iv) cooperated fully with the Chapter 7 Trustee; (v) produced or surrendered all property of the estate and requested documents to the Chapter 7 Trustee and has hidden nothing from its creditors; and (vi) appeared and provided testimony at the § 341 meeting of creditors.[57]

Therefore, the Ledgerwood Creditors' eighth contention evidencing "cause" to dismiss the Debtor's case due to misrepresentation and a lack of candor is baseless and fails.

---

[52] ECF No. 34 pg. 3, f/n 2.
[53] ECF No. 85, page 4 ¶ 12.d.
[54] ECF No. 4.
[55] ECF Nos. 2 & 33.
[56] ECF Nos. 3, 11, and 12.
[57] Ledgerwood Exs. 258 & 259.

In conclusion, the credible and persuasive evidence offered over three full days of trial overwhelmingly established that the Debtor filed this Chapter 7 case in good faith and no "cause" exists to warrant dismissal of the Debtor's case. Therefore, the Ledgerwood Creditors' Motion to Dismiss is **DENIED**.

**B.      Motion for Sanctions**

The Court will next address the Ledgerwood Creditors' Motion for Sanctions. The Ledgerwood Creditors request that the Court impose sanctions against the Cocanougher Sanction Targets pursuant to (i) Rule 9011 of the Federal Rules of Bankruptcy Procedure, (ii) 28 U.S.C. § 1927, and (iii) 11 U.S.C. § 105(a).

The Ledgerwood Creditors contend that the Cocanougher Sanction Targets should be sanctioned for the following alleged conduct:

    a.  Causing the Debtor's bankruptcy petition to be filed for one or more improper purposes;

    b.  causing to be filed Debtor's bankruptcy petition and schedules in which key factual contentions lacked evidentiary support;

    c.  multiplying the proceedings unreasonably and vexatiously; and

    d.  carrying out lengthy and coordinated bad faith schemes to manipulate and exploit the bankruptcy system, culminating in misrepresentations and a lack of candor in these proceedings.[58]

In response, the Cocanougher Sanction Targets contend that the Motion for Sanctions is baseless, frivolous, and was filed to harass the Cocanougher Sanction Targets. Therefore, not only should the Court deny the Motion for Sanctions, but further, the Court should issue sanctions

---

[58] ECF No. 85 at 4, ¶ 12.

against the Ledgerwood Creditors for having filed and prosecuted the Motion for Sanctions pursuant to 11 U.S.C. § 105(a) and Rule 9011(c)(1)(A).

The Court will first address each of the Ledgerwood Creditors contentions against the Cocanougher Sanction Targets.

### (i)    The Debtor's case was filed for legitimate bankruptcy purposes.

First, the Ledgerwood Creditors contend that the Cocanougher Sanction Targets caused "the Debtor's bankruptcy petition to be filed for one or more improper purposes." More specifically, the Ledgerwood Creditors allege that "the Cocanoughers sought to shield themselves from alter-ego risks that most second-year law students would recognize."[59] The Court disagrees. The Ledgerwood Creditors failed to offer any credible evidence to support this contention. Rather, the overwhelming, credible evidence established that the Debtor's bankruptcy petition was filed in good faith and for proper purposes.

Based on the Court's findings of fact and analysis previously set forth in denying the Ledgerwood Creditors' Motion to Dismiss, the Court finds and concludes that the Ledgerwood Creditors' first alleged sanctionable conduct against the Cocanougher Sanctions Targets is baseless, frivolous, and fails.

### (ii)    The Debtor's bankruptcy petition and schedules were accurate.

Second, the Ledgerwood Creditors contend that the Cocanougher Sanction Targets "filed Debtor's bankruptcy petition and schedules in which key factual contentions lacked evidentiary support." The Court disagrees. The Ledgerwood Creditors failed to offer any materially credible evidence to support this contention. Rather, the overwhelming, credible evidence established that

---

[59] ECF No. 85 at 3 ¶ 5.d and 20 at ¶ 64.d.

the Debtor timely filed its list of creditors, its Schedules of Assets and Liabilities, and its Statement of Financial Affairs. Further, the Debtor and its representatives fully cooperated with the Chapter 7 Trustee and produced or surrendered all property of the estate and requested documents to the Chapter 7 Trustee. In addition, the Debtor appeared and provided testimony at the § 341 meeting of creditors. When the Debtor discovered that certain of its interests in oil and gas leases had inadvertently been omitted in the Debtor's initial schedules, the Debtor timely filed its amended schedules. Specifically on the amended schedule issue, the Court found the testimony of both Mr. Patterson and Ms. Downing to be credible and persuasive.

The Court finds and concludes that the Ledgerwood Creditors' second contention of sanctionable conduct against the Cocanougher Sanction Targets is baseless, frivolous, and fails.

### (iii)    The Cocanougher Sanction Targets fairly participated in the bankruptcy proceedings.

Third, the Ledgerwood Creditors contend that the Cocanougher Sanction Targets "multiplied the proceedings unreasonably and vexatiously." Again, the Court disagrees. The Ledgerwood Creditors failed to offer any credible evidence to support this contention. Rather, the overwhelming, credible evidence directly contradicts the Ledgerwood Creditors' contention. Each of the Cocanougher Witnesses testified credibly to the genuine motive behind the decision for the Debtor's bankruptcy filing—which, in part, was to limit the cost caused by the Oklahoma Lawsuit, not to cause delay or increase the cost of the Oklahoma Lawsuit to the Ledgerwood Creditors. Moreover, the Debtor produced substantial discovery to the Ledgerwood Creditors to prepare for these contested matters—including the production of substantial numbers of documents, written discovery, and the production of witnesses for depositions—all at a great cost to the Debtor and the Cocanougher Sanction Targets.

Based on the Court's findings of fact and analysis previously set forth in denying the Ledgerwood Creditors' Motion to Dismiss, the Court finds and concludes that the Ledgerwood Creditors' third contention of sanctionable conduct against the Cocanougher Sanction Targets is baseless, frivolous, and fails.

**(iv)    The Cocanougher Sanction Targets have acted in good faith during this process**.

Finally, the Ledgerwood Creditors contend that the Cocanougher Sanction Targets carried "out a lengthy and coordinated bad faith scheme to manipulate and exploit the bankruptcy system, culminating in misrepresentations and a lack of candor in these proceedings." Again, the Court disagrees. The Ledgerwood Creditors failed to offer a scintilla of credible evidence to support even a hint of these salacious contentions. Rather, the overwhelming, credible evidence directly contradicts the Ledgerwood Creditors' contentions. Each of the Cocanougher Witnesses testified credibly to the genuine motive behind the decision for the Debtor's bankruptcy filing.

Based on the Court's findings of fact and analysis previously set forth in denying the Ledgerwood Creditors' Motion to Dismiss, the Court finds and concludes that the Ledgerwood Creditors' fourth contention of sanctionable conduct against the Cocanougher Sanction Targets is baseless, frivolous, and fails.

In conclusion, the credible and persuasive evidence over three full days of trial overwhelmingly established that the Cocanougher Sanction Targets did not engage in any sanctionable conduct. Therefore, the Ledgerwood Creditors' Motion for Sanctions is **DENIED**.

C.      **Award of Sanctions Against the Ledgerwood Creditors**

Because the Court has denied the Ledgerwood Creditors' Motion for Sanctions, the Court must now address whether the Cocanougher Sanction Targets are entitled to sanctions against the Ledgerwood Creditors for having filed and prosecuted the Motion for Sanctions.

Based on a thorough review of the record created over three full days of trial, the Court finds and concludes that the Ledgerwood Creditors' allegations and factual contentions contained in the Motion for Sanctions (and to a lesser degree in the Motion to Dismiss) failed to have any evidentiary support. More troubling, the Ledgerwood Creditors filed their Motion for Sanctions nine months after they filed their Motion to Dismiss and after they had over nine months to investigate their contentions and conduct considerable discovery to determine the existence of any such supporting evidence—at great expense to the Cocanougher Sanction Targets.

Based on the dearth of any credible evidence presented by the Ledgerwood Creditors in support of their Motion for Sanctions over three full days of trial, the Court can reach no conclusion other than finding that the Motion for Sanctions was filed and prosecuted by the Ledgerwood Creditors in bad faith for an improper purpose to harass the Cocanougher Sanction Targets. Because the Court finds and concludes that the Motion for Sanctions was filed by the Ledgerwood Creditors without any factual or legal basis and was filed in bad faith for an improper purpose to harass the Cocanougher Sanction Targets, the Court must now address whether sanctions should be imposed against the Ledgerwood Creditors.

In support of request for sanctions against the Ledgerwood Creditors, the Cocanougher Sanction Targets cite both (i) Rule 9011(c)(1)(A) of the Federal Rules of Bankruptcy Procedure and (ii) 11 U.S.C. § 105.

**1.    Rule 9011(c)(1)(A)**

Because the Ledgerwood Creditors initially introduced Bankruptcy Rule 9011 into this proceeding in their Motion for Sanctions, the Court will first address the Cocanougher Sanction Targets' rights under Rule 9011.

Bankruptcy Rule 9011(c) provides, in pertinent part, "[i]f, after notice and a reasonable opportunity to respond, the court determines that [Rule 9011(b)] has been violated, the court may . . . impose an appropriate sanction upon the . . . parties that have violated [Rule 9011(b)] or are responsible for the violation."[60] Rule 9011(c)(1)(A) provides further that "[i]f warranted, the court may award to the party *prevailing on the motion* the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."[61]

Here, the Court finds that the Ledgerwood Creditors' conduct of filing and prosecuting the Motion for Sanctions was meritless, frivolous, and warrants sanctions for violating Rule 9011(b). Because the Cocanougher Sanction Targets are the prevailing party on the Ledgerwood Creditors' Motion for Sanctions, the Court "*may* award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."[62] In support of their request for sanctions, the Cocanougher Sanction Targets offered into evidence the invoices from their respective attorneys:

    a.   Whitaker Chalk Swindle & Schwartz, PLLC—attorneys for the Debtor—fees and expenses in the amount of $4,555.00;[63] and

---

[60] *See* Fed. R. Bankr. P. 9011(c).
[61] *See* Fed. R. Bankr. P. 9011(c)(1)(A) (emphasis added).
[62] *Id.* (emphasis added).
[63] Debtor's Ex. 174.

    b.  Pope, Hardwicke, Christie, Schell, Kelly & Taplett, LLP—attorneys for the non-debtor Cocanougher Sanction Targets—fees and expenses in the amount of $102,650.69.[64]

The Court has reviewed each of the above invoices and finds that the requested attorneys' fees and expenses detailed in each of the invoices constitute reasonable attorneys' fees and expenses incurred by the Cocanougher Sanction Targets in opposing the Ledgerwood Creditors' Motion for Sanctions under Rule 9100(c).

## 2. *11 U.S.C. § 105*

The Ledgerwood Creditors also initially introduced 11 U.S.C. § 105 in this proceeding in their Motion for Sanctions. The Court finds that 11 U.S.C. § 105(a) is instructive under the facts and circumstances of this matter.

Section 105(a) states "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."[65]

To impose sanctions under the bankruptcy court's inherent authority under § 105(a) of the Bankruptcy Code, the bankruptcy court is required to make specific findings of bad faith.[66] "[T]he finding of bad faith must be supported by clear and convincing proof."[67] Further, the court's inherent power is not "a broad reservoir of power, ready at the imperial hand, but a limited source;

---

[64] Debtor's Ex. 175.
[65] 11 U.S.C. § 105(a).
[66] *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 813 (5th Cir. 2017).
[67] *In re Moore*, 739 F.3d 724, 729 (5th Cir. 2014).

an implied power squeezed from the need to make the court function."[68] A bankruptcy court's inherent powers to sanction "may be exercised only if essential to preserve the authority of the court, and the sanction chosen must employ the least possible power adequate to the end proposed."[69]

Here, the record before the Court overwhelmingly supports the conclusion, by clear and convincing proof, that the Ledgerwood Creditors' contentions in the Motion for Sanctions—many of which were exceedingly salacious—were made in bad faith without any evidentiary support. Further, such contentions were made after the Ledgerwood Creditors had conducted over nine months of investigation and discovery. Based on the dearth of evidence offered by the Ledgerwood Creditors over three full days of trial in support of the Motion for Sanctions, as opposed to the overwhelming, credible controverting evidence offered by the Cocanougher Sanction Targets to refute each of the baseless contentions alleged by the Ledgerwood Creditors, the Court finds and concludes that the Ledgerwood Creditors' Motion for Sanctions was filed in bad faith for the improper purpose to harass the Cocanougher Sanction Targets.

Therefore, the Court concludes further that imposing sanctions against the Ledgerwood Creditors is appropriate and warranted under § 105(a).

### 3.    *Appropriate Sanctions Against the Ledgerwood Creditors*

When considering appropriate sanctions in this case, the Court is mindful that the Ledgerwood Creditors have suffered damages and inconvenience caused by the saltwater contamination on their property through no fault of their own. On the other hand, merely because the Ledgerwood Creditors have been damaged by the saltwater contamination, this does not

---

[68] *In re Pastran*, 462 B.R. 201, 209 (Bankr. N.D. Tex. 2011).
[69] *Carroll,* 850 F.3d at 815.

provide them with an unfettered right to retaliate or lash out against unrelated and far-removed targets, such as the Cocanougher Sanction Targets.

Based on the facts and circumstances of this case and pursuant to the authority under § 105(a) and Bankruptcy Rule 9011(c), the Court finds and concludes that the issuance of two alternative forms of sanctions is appropriate against the Ledgerwood Creditors in this case. The Court will allow the Ledgerwood Creditors to ultimately decide which form of sanctions will be assessed against them.

### (1)    A prefiling injunction.

The first alternative form of sanctions is a pre-filing litigation injunction issued by this Court pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 9011 enjoining the Ledgerwood Creditors from filing or prosecuting any direct, derivative, or alter-ego claims or causes of action against the Debtor, the General Partner, the Debtor's limited partners, the Cocanougher Sanction Targets, or the Cocanougher Lenders in any federal or state court, including the Oklahoma Lawsuit, without this Court's permission.

The Court's power to enter such pre-filing injunctions flows from various statutes, rules relating to sanctions, and the inherent power of the court pursuant to 11 U.S.C. § 105 to protect its jurisdiction and judgments. [70] A court's order that prevents a party from filing future lawsuits without that judge's permission is a pre-filing injunction. [71] In determining whether a court should impose a pre-filing injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including (i) the party's history of litigation, in particular whether the party has

---

[70] *See Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986) (citing Rule 9011 to support this proposition).
[71] *See IntegraNet Physician Res., Inc. v. Texas Indep. Providers, L.L.C.*, 945 F.3d 232, 237 (5th Cir. 2019), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020).

filed vexatious, harassing, or duplicative lawsuits; (ii) whether the party had a good faith basis for

pursuing the litigation, or simply intended to harass; (iii) the extent of the burden on the courts and

other parties resulting from the party's filings; and (iv) the adequacy of alternative sanctions.[72]

After weighing each of the relevant circumstances in this case, the Court finds and

concludes that the issuance of such a pre-filing injunction constitutes an appropriate sanction in

this case.

### (2)    Reimbursement of the Debtor's and Cocanougher Sanction Targets' attorneys' fees.

The second alternative form of sanctions is the reimbursement of the Debtor's and

Cocanougher Sanction Targets' attorneys' fees and expenses. Specifically, those fees and expenses

are in the amounts of $4,555.00 and $102,650.69, respectively, for having to defend against the

Ledgerwood Creditors' frivolous Motion for Sanctions.

Again, the Court "*may* award to the party prevailing on the motion the reasonable expenses

and attorney's fees incurred in presenting or opposing the motion."[73] Here, as the evidence and

analysis from this order reflects, the Cocanougher Sanction Targets prevailed on the Ledgerwood

Creditors' Motion for Sanctions. As such, the Court has the authority to award to the Cocanougher

Sanction Targets—the party *prevailing on the motion*—their reasonable expenses and attorney's

fees incurred in opposing the motion.

The Ledgerwood Creditors will control which form of sanctions is ultimately issued against

them. If the Ledgerwood Creditors desire to continue to litigate any direct, derivative, or alter-ego

claims against the Debtor, the General Partner, the Debtor's limited partners, the Cocanougher

---

[72] *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008).
[73] *See* Fed. R. Bankr. P. 9011(c)(1)(A) (emphasis added).

Sanction Targets, or the Cocanougher Lenders in any federal or state court, including the Oklahoma Lawsuit, then the Ledgerwood Creditors must first file a motion in this Court seeking authority to file and prosecute any such claims.

If (i) any appellate court or other court of competent jurisdiction determines that the issuance of the litigation injunction is unenforceable or beyond this Court's authority, or (ii) if the Ledgerwood Creditors file a motion with this Court seeking authority to file and prosecute any such direct, derivative, or alter-ego claims against the General Partner, the Debtor's limited partners, Cocanougher Sanction Targets, and or Cocanougher Lenders, and such motion is granted, then, pursuant to Bankruptcy Rule 9011(c), the Court will issue the following monetary sanctions against the Ledgerwood Creditors: (1) Reimbursement to the Debtor of its attorneys' fees and expenses in the amount of $4,555.00; and (2) reimbursement to the Cocanougher Sanction Targets of their attorneys' fees and expenses in the amount of $102,650.69 for having to defend against the Ledgerwood Creditors' frivolous Motion for Sanction.

Therefore, the Ledgerwood Creditors will determine which form of sanctions they will ultimately receive—either (i) a pre-filing injunction enjoining them from filing or prosecuting any alleged claims against the General Partner, Debtor's limited partners, Cocanougher Sanction Targets, and/or Cocanougher Lenders without this Court's permission or (ii) reimbursement to the Debtor and the Cocanougher Sanction Targets for their attorneys' fees and expenses for having to defend against the frivolous Motion for Sanctions.

The Court reserves the right to make additional findings of fact and conclusions of law.

## V.    CONCLUSION

For all the above reasons and based upon the Court's findings of fact and conclusions of law detailed herein, it is **ORDERED** as follows:

1. The Motion to Dismiss is **DENIED**;

2. The Motion for Sanctions is **DENIED**;

3. The Debtor's and the Cocanougher Sanction Targets' request for the issuance of sanctions

    against the Ledgerwood Creditors is **GRANTED** as follows;

    a. The Ledgerwood Creditors are hereby enjoined pursuant to 11 U.S.C. § 105 and

        Bankruptcy Rule 9011 from filing or prosecuting any direct, derivative, or alter-

        ego claims or causes of action against the General Partner, the Debtor's limited

        partners, the Cocanougher Sanction Targets, or the Cocanougher Lenders in any

        federal or state court, including the Oklahoma Lawsuit, without this Court's

        permission;

    b. if (i) any appellate court or other court of competent jurisdiction determines that

        the issuance of the above litigation injunction is unenforceable or beyond this

        Court's authority or (ii) if the Ledgerwood Creditors file a motion with this Court

        seeking authority to file and prosecute any such direct, derivative, or alter-ego

        claims against the General Partner, the Debtor's limited partners, Cocanougher

        Sanction Targets, and/or Cocanougher Lenders, and such motion is granted, then,

        pursuant to Bankruptcy Rule 9011(c), the Court will issue the following monetary

        sanctions against the Ledgerwood Creditors: (1) reimbursement to the Debtor of its

        attorneys' fees and expenses in the amount of $4,555.00; and (2) reimbursement to

        the Cocanougher Sanction Targets of their attorneys' fees and expenses in the

        amount of $102,650.69 for having to defend against the Ledgerwood Creditors'

        frivolous Motion for Sanctions.

### ### END OF ORDER ###